HENRY L. BERNARD *vs.* JAMES H. SMITH.

CATHERINE BERNARD *vs.* JAMES H. SMITH.

JUNE 5, 1914.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Negligence.  Minors.  Firearms.*

A declaration charging in one count the violation of the statutory duty imposed
   by Gen. Laws, 1909, cap. 134, § 7, which prohibits the sale of firearms to
   minors under the age of 15 years without the written consent of the parent
   or guardian and in a second count a violation of the common law duty in the
   sale and delivery of a rifle and ammunition to a minor 11 years of age unused
   to and inexperienced in the use of firearms, all of which defendant knew or
   should have known, whereby plaintiff traveling upon the highway was shot
   while the minor was firing at a target, states a cause of action, and is not
   defective in not alleging that the minor acted in ignorance of the danger and
   while in the exercise of that degree of care of which he was capable, since
   the negligence of the minor in handling the weapon or even his willful use
   of it was one of the natural consequences of entrusting him with it.

*(2)  Evidence.  Experts.*

A question asked of a medical expert calling for an opinion involving a knowl-
   edge of metals and the force of explosives which it did not appear witness
   possessed was properly excluded.

*(3)  Evidence.*

A statement that witness who had not qualified as an expert had made a test to
   determine a certain fact, without disclosing the manner of such test or its
   result was not prejudicial.

TRESPASS ON THE CASE for negligence.   Heard on excep-
tions of defendant and overruled.

VINCENT, J.   The plaintiff, Catherine Bernard, brings her
suit to recover damages for personal injuries alleged to have
been suffered by her through the negligence of the defendant,
and the plaintiff, Henry L. Bernard, the husband of Catherine
Bernard, brings his suit to recover for loss of services and
expenses due to the same injuries.

These cases were first tried in the Superior Court on the
defendant's demurrers to the declarations.   The demurrers

were overruled. Later the cases were tried together to a
jury in the Superior Court and the plaintiffs, Catherine
Bernard and Henry L. Bernard, recovered verdicts of $500
and $135, respectively. The cases are now before this
court upon the defendant's exceptions to the decision of the
Superior Court overruling the demurrers to the declarations;
to the rulings of the court during the trial admitting and
excluding testimony; to the refusal to permit the defendant
to have the jury find specially upon certain questions; to
the refusal of the court to charge as requested by the defend-
ant; to the refusal of the court to direct a verdict; and to the
decision of the court in denying the defendant's motion for a
new trial.

It appears from the evidence that the plaintiff, Catherine
Bernard, at about five o'clock in the afternoon of December
11, 1911, while walking along Centennial street in the village
of Pascoag, was hit in the arm by a bullet shot from a rifle
in the hands of a boy named Armand Boucher, the distance
between Boucher and the plaintiff at the time of the shooting
being about two hundred and fifty feet. The boy Boucher
was eleven years of age. He had purchased the rifle, said to
be a .22 calibre, and two boxes of cartridges at the defendant's
store from a Mr. Stokes, who was in the employ of the
defendant and in charge of the store at the time of the sale.
The defendant was not personally present when the sale was
made and did not know of it until a later period. The
purchase of the rifle and cartridges was without the consent
or the knowledge of the boy's parents. The boy was
entirely unacquainted with and inexperienced in the use of
firearms. It was only after some experimenting, in which he
was assisted by his companions, that he was able to load and
discharge the rifle. After several shots had been fired, the
Boucher boy with his companions proceeded to Centennial
street where they set up, in the travelled way, a target.
This target consisted of a "spider" or frying pan, with the
handle stuck in the ground. After one or two harmless
attempts to hit this target, the rifle was again discharged by

the Boucher boy, the bullet striking Mrs. Bernard, who was approaching along the highway in plain sight and distant about two hundred and fifty feet.

The declaration in each case is in two counts. The negligence charged in the first count is the violation of the statutory duty imposed by Sec. 7, Chap. 134, Gen. Laws of 1909, which prohibits the sale of firearms to minors under the age of fifteen years without the written consent of the parent or guardian. The second count sets up the sale and delivery of the rifle to Armand Boucher in violation of the common law duty, the said Boucher being under the age of twenty-one years, to wit, of the age of eleven years, and unused to and inexperienced in the use of firearms, all of which the defendant knew or should have known.

The defendant demurred in each case to each of said counts on the ground that, no cause of action was stated. The demurrers, however, do not point out or suggest in what respect the plaintiffs' declarations fail to state a cause of action, but we conclude from the rescript of the Superior Court that the grounds of demurrer were more particularly set forth in the argument of defendant's counsel who claimed that the declarations were defective in failing to allege that the child who discharged the rifle did so in ignorance of the danger and while he was in the exercise of that degree of care of which he was capable. As the Superior Court said, in overruling the demurrers, if the injury alleged had been to the child to whom the dangerous article was entrusted, there might have been some force in this argument; some allegations might have been necessary to show that he was not guilty of contributory negligence. But here where the injury was to a third person it is not necessary to negative due care or even the willful action of the child. The negligence of the child in handling the dangerous weapon or even his willful use of it was one of the natural consequences of entrusting him with it. We think the demurrers to the declarations were properly overruled.

(2)     The defendant called as a witness Dr. Arthur L. Fanning, who gave testimony as a medical expert. In the course of his direct examination he was asked this question: "Assuming that one of these what is generally known as a .22 bullet or lead bullet is fired a distance of 250 feet and that bullet striking the arm goes through and comes in contact with a piece of bone, would you suppose that that bullet would split and shatter into several pieces?" The question was objected to by the plaintiffs and was excluded by the court. It is apparent that the question called for an opinion involving a knowledge of metals and the force of explosives which it does not appear that the witness possessed and we think its exclusion was proper.

The plaintiff, Henry L. Barnard, testified, without objection, that while he was in possession of the rifle and cartridges he had another party make a test, as he had never handled a gun in his life, and that he was present at such test. He was then asked the further question: "Did you make any (3) test to see how far this rifle would carry?" This question was objected to, allowed by the court, and an exception taken by the defendant. The witness said in reply that he had made such a test. He was then asked: "How did you make it?" This question was also objected to, but in the colloquy which ensued the defendant having substantially admitted that the bullet which hit Mrs. Bernard came from the rifle in question, and the admission being satisfactory to the plaintiff, the question was not pressed and was not answered. We do not think that there is any merit in this exception. The statement by the witness that he had made a test to determine the distance the rifle would carry without making any attempt to disclose the manner of such test or the result thereof could in no way be prejudicial to the defendant.

At the close of the testimony the defendant asked that the jury be required to answer the following special questions.

"1.     Could the Boucher boy with the use of reasonable care and vigilance have seen Mrs. Bernard coming down the road toward him at the time of his shooting of her?

"2. Was the Boucher boy at the time of his shooting of Mrs. Bernard warned by the boys, Frank Gallagher and Deus Aubin, not to shoot, because there was a woman coming down the road?

"3. Did the Boucher boy see Mrs. Bernard coming down the highway when he shot her?

"4. Did the Boucher boy at the time of his shooting Mrs. Bernard, taking into account his age, experience, capacity and understanding, use that degree of care and vigilance that children of his age ordinarily exercise under the same circumstances?

"5. Was the injury to Mrs. Bernard the natural and probable consequence of defendant Smith's negligence in selling rifle and cartridges to the Boucher boy and was the result namely, the injury to Mrs. Bernard, the result reasonably to be foreseen?"

The court refused to propound these questions to the jury and the defendant took an exception. The first four of these special questions are immaterial to the issue involved in the case. There is but one issue. Was the defendant negligent in selling the rifle to the boy and was the injury to Mrs. Bernard the natural and probable consequence of that negligence? It is not important to determine whether the boy with reasonable care could have seen Mrs. Bernard approaching; whether he was informed of her approach by his companions; whether he actually observed Mrs. Bernard coming down the highway when he fired the rifle; or whether he used that degree of care which would be ordinarily exercised by one of that age and experience. The question to be determined is, was it negligence for the defendant to sell to a boy of the age and inexperience of the Boucher boy a rifle and cartridges, and consequently was the shooting of Mrs. Bernard a natural and probable result which should have been, under the circumstances, understood and appreciated by the defendant? The defendant's fifth special question is substantially the same as the one answered by the jury, and which was presumably propounded by the

plaintiffs, although the record does not seem to disclose where it originated. We think that the trial court was justified in its refusal to submit to the jury the special questions. The defendant perferred in all six requests to charge. These requests appear to be divided into two groups. The first group being numbered from 1 to 4, both inclusive, and the second group, 2 and 4. These requests were refused. Upon a a careful examination thereof in connection with the transcript of testimony and the charge we find numbers 1 and 2 of the first group to be unwarranted by the testimony; that numbers 3 and 4, also of the first group, are sufficiently covered in the charge; and that numbers 2 and 4 of the second group were properly refused.

The defendant's exceptions are all overruled, and both cases are remitted to the Superior Court, with direction to enter judgment for the plaintiff in each case on the verdict.

*George W. Greene, P. Francis Cassidy,* for plaintiffs.
*Crane, Munro & Barry,* for defendant.